UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| The Pennsylvania State University,<br><br>Plaintiff<br><br>v.<br><br>Learfield Communications, LLC,<br><br>Defendant | Case No. 4:23-CV-2009 |

## COMPLAINT

The Pennsylvania State University ("Penn State" or the "University"), by and through its attorneys, hereby avers the following:

1. This action arises from Penn State's need for prompt declaratory relief to confirm its legal rights related to a request for proposal ("RFP") process conducted by the University related to a contract regarding its multimedia rights.

2. Penn State files this action as a result of certain assertions made by the University's incumbent multimedia rights partner, Learfield Communications, LLC ("Learfield"), that Learfield is entitled to information about the RFP process and that Penn State is precluded by Pennsylvania law and its own policies from finalizing the RFP process and contracting with the selected bidder.

## Parties

3. Plaintiff, Penn State, is a not-for-profit, State-related institution of higher education, organized and existing under the laws of Commonwealth of Pennsylvania. Penn State maintains a place of business at 208 Old Main, University Park, Centre County, Pennsylvania, 16802.

4. Upon information and belief, Defendant Learfield Communications, LLC is a limited liability corporation organized under the laws of Delaware with its principal place of business in Dallas, Texas. The parent corporations of Learfield Communications, LLC are IMG College, LLC, Atairos Group, Inc., and WME Entertainment Parent, LLC.

## JURISDICTION AND VENUE

5. Penn State brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202.

6. This Court has jurisdiction over the subject matter of this case due to diversity of citizenship pursuant to 28 U.S.C. § 1332, as this is an action between citizens or corporations of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue lies in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391.

## FACTS AND PROCEDURAL BACKGROUND

### The Parties' Relationship

8. Penn State and Learfield have been in a contractual relationship for over twenty (20) years.

9. Penn State's current grant of multimedia rights to Learfield runs through May 31, 2024.

### The RFP Process

10. On December 6, 2022, Plaintiff sent out the RFP solicitation for Intercollegiate Athletics Multimedia Rights, a true and correct copy of which is attached hereto as Exhibit A.

11. The RFP sought proposals to provide multimedia rights partnerships beginning on June 1, 2024, after expiration of the current contractual term with Learfield for similar services.

12. The RFP required proposals addressing seven items of interest to Penn State to be submitted by Wednesday, December 12, 2022, at 5:00 PM EST via email to an employee of the Penn State Procurement Services Office.

13. The Penn State Central Procurement Prerequisites were attached as "Exhibit B" to the RFP (the "Prerequisites"), which outlined Penn State's RFP process. Exhibit A at 9.

14. The Prerequisites outline Penn State's rights in the RFP process, including the rights to:

    a. "[m]ake all decisions regarding this sourcing event, including, without limitation, the right to decide whether an event response does or does not substantially comply with the requirements of this sourcing event;

    b. Accept, reject, or negotiate modifications in any terms of Supplier's event response or any parts thereof;

    c. Waive any informalities;

    d. Accept or reject any or all event responses received;

    e. Renegotiate/rebid the equipment/products/services listed at any time if determined to be in the in the best interest of the University;

    f. Close an event early, postpone event opening, or cancel the event for its own convenience;

    g. Negotiate with more than one Supplier concurrently; and

    h. Use any or all concepts presented in any reply to the event."

Exhibit A at 9.

15. The Prerequisites provide that "All material submitted becomes the property of the University". Exhibit A at 9.

16. The Prerequisites also provide the following protest process:

> Any actual or prospective proposer may protest the solicitation or award of a contract for violations of Penn State's procurement policies or of laws and regulations governing Penn State's procurement activities. In order to be considered, all protests must be in writing and filed with and received by Penn State, not more than five (5) business days following the date of issuance of Penn State's Notice of Intent to Award or Notice of Award with the contact below. Protests received by Penn State after this date will be returned to the sender. [...] Failure to timely file the bid protest shall constitute grounds for Penn State to deny the bid protest without further consideration of the grounds stated therein.

Exhibit A at 10.

## Learfield's RFP Submissions

17. Learfield submitted an initial proposal in response to the RFP in advance of the December 12, 2022 deadline set forth in the RFP (the "Initial Response").

18. Learfield's Initial Response, along with timely proposals from other bidders, was considered by the University pursuant to the RFP process.

19. More than ten (10) months after the December 12, 2022 RFP deadline, on or about November 17, 2023, Learfield submitted a second RFP response that was untimely and failed to comply with the RFP's submission requirements (the "Second Response").

20. The University did not consider Learfield's untimely and procedurally improper Second Response.

21. The University ultimately notified Learfield that its bid had not been selected.

### Learfield's November 28, 2023 Letter

22. On November 28, 2023, Learfield's Chief Legal Officer, John H. Raleigh, sent a letter to Penn State protesting Penn State's intent to award a contract (the "Protest Letter"). A true and correct copy of Learfield's Protest Letter is attached hereto as Exhibit B.

23. Learfield's Protest Letter demands that Penn State provide the following related to the selected bidder: "proposal (including financial offer), the categories scored by the University, the score sheets for each evaluator, and any and all emails or other documents related to the RFP" (the "Requested Information").

24. Learfield's Protest Letter asserts that its right to information regarding the selected bidder's proposal is grounded in "black letter procurement law".

25. Learfield's letter generally refers to "Section 1711.1 of the Pennsylvania Code", "Pennsylvania's Right to Know Law", "the RFP", and "PSU's Procurement Policies".

26. Learfield's letter also asserts that Penn State "is prohibited under the [sic] Pennsylvania state law from entering into a contract" with the selected bidder "or taking any further steps to award the rights that are covered by the RFP". Exhibit B at 2 ¶ 5.

### Learfield's December 4, 2023 Letter

27. On December 4, 2023, Learfield's Chief Legal Officer, John H. Raleigh, sent a letter to Penn State supplementing the Protest Letter ("Supplemental Protest Letter"). A true and correct copy of Learfield's Supplemental Protest Letter is attached hereto as Exhibit C.

28. The RFP does not allow for Supplemental Protest Letters. Exhibit A at 10.

29. The Supplemental Protest Letter repeats Learfield's assertion that its right to information regarding bidder's proposal is grounded in the Pennsylvania Procurement Code. Exhibit C at 1-3.

30. The Supplemental Protest Letter asserts "PSU must immediately institute a complete stay of this procurement, which includes entering into or implementing a contract with [the selected bidder], or any other entity, resulting from this RFP." Exhibit C at 3.

31. The RFP does not allow for a bidder to seek a stay of the process. Exhibit A at 9-10.

### Pursuant to the RFP, Penn State Evaluated Learfield's Protest

32. Consistent with the RFP, the University evaluated Learfield's Protest and Supplemental Protest.

33. Penn State found no merit to the factual or legal assertions set forth in Learfield's Protest and made the decision to reject Learfield's Protest and Supplemental Protest.

### Penn State's Response to Learfield's Protest

34. Consistent with the RFP, and its finding of no merit to Learfield's protest, the University communicated its decision to reject Learfield's protest in letters dated December 5, 2023.

## Pursuant to the RFP, Penn State Executed an Agreement with the Selected Bidder

35. On December 4, 2023, after the expiration of the protest period, and after having reviewed and made the decision to reject Learfield's Protest and Supplemental Protest, Penn State and the selected bidder executed an agreement pursuant to the RFP assigning multimedia rights to the selected bidder.

## Learfield's assertions create an actual controversy that, if unresolved, presents a substantial likelihood that the University will suffer injury in the future

36. Learfield's Protest Letter, Supplemental Protest Letter, and its Request for Information present a case of actual controversy as required under the Declaratory Judgments Act.

37. Specifically, Learfield is demanding access to the Requested Information currently, which information Penn State is not legally obligated to provide. Relatedly, Learfield is asserting that Penn State is prohibited under Pennsylvania law from finalizing its RFP process and contracting with the selected bidder.

38. Learfield's assertions present precisely the sort of definite and concrete dispute related to the parties' legal relations and interests that the Declaratory Judgments Act was enacted to address.

39. Resolution of these issues now by this Court will enable the parties to move forward with next steps following the RFP process with certainty as to their respective legal rights and obligations.

40. The University will suffer future harm if prohibited from proceeding with the selected bidder in connection with the rights covered under the RFP.

41. A material term of any media rights partnership is the ramp-up period in which media partners negotiate key sponsorships prior to the start of the contract term. Commencement of the contract term in this instance is June 1, 2024.

42. If prohibited from facilitating the selected bidder's ramp-up time, the University faces a substantial likelihood of injury—including but not limited to, a breach of contract action from the selected bidder, potential loss of millions of dollars in sponsorship agreements, and damages arising from the inability to have sponsors secured for the upcoming academic year and related athletics season.

## COUNT I

**Request for Declaratory Judgment Pursuant to 28 U.S.C. § 2201 et seq.**

**(Learfield has no legal right to obtain the Requested Information)**

43. Learfield seeks access to the Requested Information about the University's procurement process to which it has no legal right.

44. The University's RFP process is competitive and included bid submissions from multiple multimedia rights partners who are competitors of each other.

45. It is antithetical to the conduct of a fair RFP process to allow one bidder to attempt to gain access to the confidential and proprietary proposal of its competitor by protesting the outcome of the RFP process.

46. None of the Pennsylvania statutes cited by Learfield in the Protest Letter entitle Learfield to the information it seeks.

47. More specifically, Learfield incorrectly relies on a provision of the Pennsylvania procurement statute applicable to public contractors. The very statute upon which Learfield relies, however, expressly *excludes* applicability to the University. The procurement process referenced in the Learfield Protest Letter, 62 Pa. Cons. Stat. §§ 101-4604, applies only to "Commonwealth Agencies". 62 Pa. Cons. Stat. § 102(a). The statute, however, expressly defines the University not as a Commonwealth Agency, but instead a "State-related Institution". 62 Pa. Cons. Stat. § 103.

48. Additionally, there is nothing in Pennsylvania's RTKL that entitles Learfield to the Requested Information about this RFP process. This information is plainly not within the scope of the RTKL's definition of records that must be

disclosed. 65 Pa. Stat. §§ 67.102, 67.701 (limiting RTKL access to public records, financial records, and legislative records of Commonwealth agencies).

49. Finally, nothing in the University's RFP Prerequisites entitles Learfield (or any other bidder) to the types of information Learfield now seeks. Exhibit A at 9-10.

50. Accordingly, Penn State seeks declaratory relief from this Court that Learfield is not entitled to the Requested Information under the Pennsylvania procurement statute upon which Learfield relies.

51. Penn State also seeks declaratory relief that Learfield is not entitled to the Requested Information under the Pennsylvania Right to Know Law.

52. Penn State also seeks declaratory relief that Learfield is not entitled to the Requested Information under Penn State's RFP Prerequisites.

## COUNT II

## Request for Declaratory Judgment Pursuant to 28 U.S.C. § 2201 et seq.

### (Learfield has no legal right to prevent Penn State from finalizing its RFP process)

53. Learfield's assertion that it can prevent Penn State from finalizing its RFP process and contracting with the selected bidder also lacks any support under Pennsylvania law.

54. As alleged above, Penn State is not subject to the public procurement statute upon which Learfield relies.

55. Learfield also fails to identify any aspect of Penn State's RFP Prerequisites that Penn State has failed to follow.

56. Penn State therefore seeks declaratory relief from this Court that the Pennsylvania public procurement statute cited by Learfield does not prevent Penn State from completing its RFP process and contracting with the selected bidder.

57. Penn State also seeks declaratory relief from this Court that Penn State's RFP Prerequisites, including the right to protest a selected bid, do not enable Learfield to prevent Penn State from completing its RFP process and contracting with the selected bidder.

## PRAYER FOR RELIEF

WHEREFORE, Penn State respectful requests that this Honorable Court:

58. Enter a Declaratory Judgment that Learfield is not entitled to the Requested Information pursuant to Pennsylvania public procurement law, the Pennsylvania Right to Know Law or the University's RFP Prerequisites.

59. Enter a Declaratory Judgment that Penn State is not prohibited under Pennsylvania public procurement law or its RFP Prerequisites from finalizing its RFP process and contracting with the selected bidder.

60. Enter a Declaratory Judgment that Learfield is not entitled to further process or disclosures pursuant to the RFP and its Prerequisites.

61. Enter a Declaratory Judgment that Learfield is not entitled to further process or disclosures pursuant to the Pennsylvania Procurement Code.

62. Enter a Declaratory Judgment that Learfield is not entitled to further process or disclosures pursuant to the Pennsylvania Right to Know Law.

63. Enter an Order providing such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: December 5, 2023 | Respectfully submitted, |
| | /s/ *Mariah H. McGrogan* <br> Mariah H. McGrogan (PA 318488) <br> Jeffrey M. Weimer (PA 208409) (pro hac vice admission pending) <br> Jason Gordon (Ill. 6289601) (pro hac vice admission pending) <br> REED SMITH LLP <br> Reed Smith Centre <br> 225 Fifth Avenue <br> Pittsburgh, PA 15222 <br> T: (412) 288-4173/3152 <br> F: (412) 288-3063 <br> E: mmcgrogan@reedsmith.com <br>    jweimer@reedsmith.com <br>    jgordon@reedsmith.com |
| | *Counsel for the Pennsylvania State University* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

/s/ *Mariah H. McGrogan*
Mariah H. McGrogan

*Counsel for The Pennsylvania State University*