# EXHIBIT B

B-1



**John H. Raleigh**
Chief Legal Officer

November 28, 2023

Mr. Richard D. Elmore
Chief Procurement Officer, Central Procurement
The Pennsylvania State University
101 Procurement Services Building
University Park, PA 16802-1004

    Re:    <u>Learfield Communications, LLC/Penn State Sports Properties, LLC ("Learfield") Protest of Notice of Award for Request for Proposal Solicitation (the "RFP") for The Pennsylvania State University ("PSU" or the "University") Intercollegiate Athletics Multi-Media Rights</u>

Dear Mr. Elmore:

Learfield has been the University's multi-media rights partner for more than twenty years, and during that time has promoted the University and its Athletics Department with care and diligence even during difficult circumstances. However, on November 17, 2023, the University sent Learfield a notice that it had decided to award a contract pursuant to the RFP to Playfly Sports ("Playfly"). Pursuant to terms of the RFP and Section 1711.1 of the Pennsylvania Code, Learfield protests the award to Playfly.

As explained below, Learfield believes that an award to Playfly is arbitrary, capricious, contrary to the RFP, based on criteria not set forth in the RFP, improper under Pennsylvania law and not in the best interest of the state taxpayers. The University must rescind the award to Playfly.

As you know, you participated in a call yesterday with Chris Sanders, Executive Vice President at Learfield, You, Pat Kraft, Vice President for Intercollegiate Athletics at the University and Vinnie James, Deputy AD for Internal Operations. During that call, you informed Mr. Sanders that Learfield had five business days from November 27, 2023 to file a protest. Relying on that instruction, this protest is timely. However, even after that instruction this protest is timely as it is being sent within five business days of the date Learfield received the notice of intent to award.

The underlying purposes of competitive bidding in Pennsylvania are to, among other things, provide for increased public confidence in the procedures followed in public procurement; ensure the fair and equitable treatment of all parties to the procurement process; provide increased economy and maximize the value of public funds; foster competition, and provide safeguards of quality and integrity in the procurement system. The awarding entity must provide all offerors with fair and equal treatment with respect to evaluation of their proposal so that competition is conducted on an equal basis and offerors are provided with a common basis for the preparation of their proposals. See, e.g., <u>Acro Serv. Corp. v. Colo. Dep't of Pers. & Admin.</u>, 2014 Colo. Dist. LEXIS 2368, *13 (Colo. D.C. 2014); <u>Protest of Sys. Mgt., Inc. & Qualimetrics, Inc.</u>, B-287032.3; B-287032.4 (Apr. 16, 2001) ("It is a fundamental principle of government procurement that

competition must be conducted on an equal basis, that is, offerors must be treated equally and be provided with a common basis for the preparation of their proposals."). "Elemental fairness requires that bidders be entitled to notice of the basis upon which their bids will be evaluated." United Techs. Commc'ns Co. v. Washington Cty. Bd., 624 F. Supp. 185, 190 (D. Minn. 1985) (granting injunction where county's subjective evaluation scale "deprived [bidder] of a fair competition against equals, and its chance to succeed or fail in an open and unbiased marketplace").

It is black letter procurement law that the RFP's evaluation procedures and criteria are mandatory and a failure to comply with the terms of an RFP is a violation of law. An RFP must be strictly complied with to ensure the fair and equitable treatment of all persons who deal with the procurement system and to provide for increased public confidence in the procedures followed in public procurement. As such, an awarding entity must evaluate each responsive and responsible proposal using the procedures and criteria described in the RFP and may not use evaluation procedures and criteria that are not contained in the RFP. Failing to utilize the evaluation criteria and evaluation procedures set forth in the RFP destroys competition and any contract awarded without proper consideration of the evaluation criteria and evaluation procedures is void.

As noted above, on November 17, 2023, Learfield received from the University a notice that it had decided to award a contract pursuant to the RFP to Playfly. On your call yesterday, Mr. Sanders requested information related to Playfly's bid, the criteria used by the University to make its decision, the scoring of the RFP responses, and other pertinent information related to the RFP. It is my understanding that you declined to provide this information except in the most ambiguous and high level nature. In any event, Learfield has not received or had an opportunity to review any documents regarding the RFP process, including, among other things, Playfly's proposal in response to the RFP, University emails regarding proposals received in response to the RFP and score sheets for each evaluator. This is a violation of Pennsylvania's Right to Know Law. Regardless, the University refusal to provide this information has the effect of denying bidders (and taxpayers) sufficient information to conduct a thorough and meaningful review of the RFP evaluation process.

Notwithstanding the foregoing, upon information and belief, the University has violated the terms of the RFP, PSU's procurement policies, and applicable Pennsylvania law, including but not limited to 62 Pa. C.S. 1711.1., by among other things, (1) rejecting (or not considering) Learfield's revised proposal; (2) scoring improperly; and (3) using criteria that were not announced in the RFP. Learfield expressly reserves the right to supplement this proposal as and when it receives requested information from the University regarding the RFP process and evaluation.

During the pendency of this protest (and any subsequent legal process), the University is prohibited under Pennsylvania state law from entering into a contract with Playfly or taking any further steps to award the rights that are covered by the RFP. This is fair and reasonable given the potential issues involved. Such a temporary hiatus will not in any way harm the University, as Learfield is currently providing multi-media rights services to the University pursuant to its current Multi-Media Rights Agreement and in any event the term covered by the RFP does not commence until July 1, 2024.

B-3

In the meantime, to assist Learfield review of the RFP process and intent to award, please provide as soon as possible, Playfly's proposal (including financial offer), the categories scored by the University, the score sheets for each evaluator, and any and all emails or any other documents related to the RFP.

We look forward to receiving the University's response to Learfield's public records request. Should you have any questions, please let me know.

Learfield values its relationship with the University and wants to continue as the University's multi-media rights partner for years in the future. Learfield firmly believes that in a fair and transparent evaluation process, the University will determine that Learfield is the best partner to manage the University's multi-media rights. We look forward to demonstrating this to the University.

Sincerely,

John H. Raleigh

cc:   Pat Kraft
      Vinnie James